No. 27,188.

SCOTT CLARK, *Appellee,* v. J. A. DAVIS et al., *Appellants.*

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW — *Due Process of Law — Mechanics' Lien Law.* The court adheres to its former decision that the legislature may enact a valid law giving a lien for labor and material used in the repair and improvement of an automobile, that shall be superior to a preëxisting chattel mortgage executed after the passage thereof. (*Hockaday Auto Supply Co. v. Huff,* 121 Kan. 113, 245 Pac. 1013.)

2. MECHANICS' LIENS—*Improvements Included.* The statute creating a lien, superior to a preëxisting mortgage, in favor of any keeper of a garage upon any automobile which shall come into his possession for the purpose of having work done thereon, or repairs or improvements thereon, such lien to be for the value of the services performed and to include the value of all material used in their performance, does not authorize such a lien for articles sold which are attached to the automobile, although a small charge is made for attaching them.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed March 12, 1927. Reversed.

*A. C. Malloy, R. C. Davis, Warren H. White* and *A. L. Oswald,* all of Hutchinson, for the appellants.

*F. P. Hettinger, F. B. Hettinger* and *John Fontron,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

MASON, J.: On March 4, 1926, Jacob Acoff bought from Davis & Child Company, automobile dealers, a new Ford roadster, paying $108.25 in cash and giving a chattel mortgage thereon for the balance of $324.75. The mortgage was recorded March 11, 1926. On March 14, 1926, he bought from Scott Clark (who was doing busi-

---

Bailments, 6 C. J. p. 1135 n. 32. Constitutional Law, 12 C. J. p. 1249 n. 48. Motor Vehicles, 28 Cyc. p. 43 n. 75; 32 A. L. R. 1007; 5 R. C. L. 448.

ness as the Clark Motor Company) a number of accessories, which the latter's workmen attached to the car. Within a few days several other small items were charged to Acoff's account. On March 29, 1926, Clark filed with the register of deeds a statement in accordance with the statute (R. S. 58-201) claiming a lien on the car for the material and labor, amounting to $184.40. On May 4, 1926, a part of the purchase price being then due and unpaid, the Davis & Child Company took possession of the car under their mortgage. Clark brought this action of replevin for its possession under his statutory lien. Judgment was rendered for the plaintiff, who was held to have a lien for $178. The defendants appeal.

The lien statute involved reads:

"A first and prior lien is hereby created in favor of any blacksmith, horse-shoer, wagon maker, keeper of a garage, or any other person, upon any goods, chattels, horses, mules, wagons, buggies, automobiles or other vehicles, and farm implements of whatsoever kind, which shall come into his or their possession for the purpose of having work done on said property, or repairs or improvements thereon, and said lien shall amount to the full amount and reasonable value of the services performed, and shall include the reasonable value of all material used in the performance of such services. Such lien shall be valid as long as the person claiming the same retains possession of said property, and the claimant of said lien may retain the same after parting with the possession of said property by filing within thirty days in the office of the register of deeds, under oath, a statement of the items of the account and a description of the property on which the lien is claimed, with the name of the owner thereof, in the county where the work was performed and in the county of the residence of the owner, if such shall be known to the claimant." (R. S. 58-201.)

1. It has already been held that the lien given by this statute is intended to be superior to a preëxisting claim under a contractual purchase-money lien (*Automobile Co. v. Dennis,* 104 Kan. 241, 178 Pac. 408) or chattel mortgage (*Overland Co. v. Evans,* 104 Kan. 632, 180 Pac. 235), and that as so construed it is valid (*Hockaday Auto Supply Co. v. Huff,* 121 Kan. 113, 245 Pac. 1013). The defendants ask a reëxamination of the constitutional question. The statute does not give merely a lien on the article which is repaired or improved, it gives "a first and prior lien." This clearly means a lien that takes precedence over existing contractual liens. Statutes which give a lien on an automobile for repairs or like matters are often held to intend a lien prior to existing chattel mortgages from a provision authorizing the claimant to retain possession until paid, sometimes with other clauses strengthening the inference of this intention.

Clark v. Davis.

*(Mortgage Securities Co. v. Pfaffmann,* 177 Cal. 109; *Cattell v. Rehrer,* 94 N. J. Eq. 292; *Bardasch v. Kalisch,* 193 N. Y. S. 719; *Willys-Overland v. Prudman Automobile Co.,* 196 N. Y. S. 487; *Johnson v. Yates,* 183 N. C. 24; *Jesse A. Smith Auto Co. v. Kaester,* 164 Wis. 205. See, also, *Commercial Credit Co. v. Brown,* [Tex. Civ. App.] 281 S. W. 1101; *Wolfman Co. v. Eisenberg,* 190 N. Y. S. 259; *Courtlandt G. & R. Corp. v. New York Y. Cab Co.,* 215 N. Y. S. 789.)

A statute giving a lien for storage charges on an automobile, and making it prior to a preëxisting chattel mortgage, has been held unconstitutional upon various grounds, including that of such preference. *(Jensen v. Wilcox Lumber Co.,* 295 Ill. 294, quoted from in note, 31 A. L. R. 837.) We see no constitutional objection to our own statute, so far as it relates to a chattel mortgage executed after its passage, as was the case here. The mortgagee in that situation is regarded as accepting the mortgage subject to the risk, so long as he allows the mortgagor to remain in possession, of a lien being created superior to his own. "The statute gives the right to lien, and the chattel mortgagee, by his mortgage contract, consents that under stated conditions his interest shall be subject to a lien, or, in other words, contracts with reference to the statute." *(Monthly Installment Loan Co. v. Skellett Co.,* 124 Minn. 144, 146. See, also, *Crosier v. Cudihee,* 85 Wash. 237; *Garr, Scott & Co. v. Clements,* 4 N. Dak. 559; *Howard v. Burke,* 176 Ia. 123.)

2. The defendants, however, contend that the material furnished and work done by the plaintiff was not such as to bring his claim for a lien within the operation of the statute. The items on which a lien was allowed by the trial court were:

| | |
|---|---:|
| One set of bumpers, front and rear | $17.50 |
| Labor putting on bumpers | 3.45 |
| Windshield wiper, installed | 11.25 |
| One large steering wheel, lock | 21.00 |
| One Stewart speedometer | 14.75 |
| Five ballon tires, tubes and wheels | 105.00 |
| Stop light | 4.35 |
| Labor—car wash | 1.50 |
| | $178.80 |

When the car—a new one—was delivered to Acoff it was fitted with the standard equipment, including among other things a stand-

ard steering wheel, cord tires, and demountable rims. In ten days five balloon tires, tubes and wheels were substituted for the originals. This, as well as the various accessories sold and attached, in a very obvious sense effected an improvement, but we are required to determine whether it was an improvement within the meaning of the word as used in the statute, which gives to any keeper of a garage or to any other person (meaning, perhaps, any other person following a like occupation) a lien upon an automobile which comes into his possession for the purpose of having work done upon it, or repairs or improvements upon it, the lien to be for the full amount and reasonable value of the services performed, and to include the reasonable value of all material used in the performance of such services.

The present statute is the result of a combination, by the commission to revise the statutes, of the essential provisions of two earlier acts on the subject. One of them gave a lien, as the revised section does, in favor of "any blacksmith, horseshoer, wagon maker, keeper of garage, or any other person" upon an article belonging to one of several enumerated classes which should come into his possession for work, repairs or improvements. (Laws 1917, ch. 232, § 1.) The other gave a lien to "any mechanic, artisan or tradesman" to whom materials were intrusted to construct, alter or repair an article. (Gen. Stat. 1915, § 6082.) The statute is akin to the common law giving an artisan's lien for labor expended and expenses incurred by which the value of a chattel is enhanced (1 Jones on Liens, 3d ed., § 731 *et seq.*), a lien under some circumstances superior to an existing mortgage. (Same, § 744.) By the language of the statute and from its analogy to similar laws it is obvious that the labor upon the article intrusted to the artisan is the principal thing, the material furnished being incidental. In the present instance for a lien to exist the car must have come into the hands of the plaintiff for the purpose of having work done upon it or repairs or improvements upon it, and the lien must be for the value of the services together with the value of "all material used in the performance of such services." Of course it does not result from this that the value of the material furnished may not far exceed that of the labor done, but the consideration of the relation between the two is an aid in determining the purpose of the legislature. There is some analogy between the statute under consideration and that relating to exemp-

Clark v. Davis.

tions, which, read literally, says any person who is the head of a family shall have the benefit of an exemption on "stock in trade" worth $400. By construction, however, it is held to protect only a tradesman who carries stock made by himself, and not a merchant who merely buys and sells goods. (*Bequillard v. Bartlett,* 19 Kan. 382.)

If situations may be imagined where it would be difficult to distinguish between on the one hand the sale by a merchant of an article which is then attached by him to an automobile, and on the other the use by a garage man of material in making repairs or improvements thereon, that now under consideration is not one of them. No great difficulty in that respect arises here, for it is evident, and indeed it expressly appears from the agreed facts, that the articles enumerated, on account of which a lien was allowed, were purchased from the plaintiff and placed on the car by his workmen. We think the charges for which the lien was allowed were not improvements within the meaning of the statute. They were not for changes in the structure of the car. They were for articles purchased by the mortgagor which were attached to the car rather than incorporated in it. In the case of the bumpers a charge of $3.45 was made for attaching them, and a charge of $11.25 was made for the windshield "installed." Otherwise no part of the claim is for labor except the $1.50 for washing the car. It cannot fairly be said that the lien claimed is for the value of the services performed together with the value of all material used in performing them. It is for articles sold which were affixed to the car, and for an almost negligible charge in two instances for attaching them. An improvement within the meaning and operation of the statute does not result from the sale of an article to the owner of a car which when attached thereto, if considered as a part thereof, increases its value. Where labor is done merely in attaching, for instance, a windshield wiper to a car the process does literally involve the use of the wiper in performing the labor of attaching it, but is not one naturally suggested by that language, or readily regarded as within its meaning. Statutes exist in some states giving liens upon automobiles for storage and gasoline charges, and making them superior to preëxisting mortgages, but the one we are now considering is of a different sort, based upon a different theory.

If the tires that came with the car had been so worn with use as to require replacement a different situation would be presented. But here the car was new—had been sold by the dealer only ten days before. The mortgagor had no authority to turn in the original wheels and tires upon the purchase of more expensive ones—he could not trade off mortgaged property—and unless they were so turned in the value of the car was increased by the change only to the extent of the difference between the value of the old and new tires, tubes and wheels, not by the cost of the new ones.

A reversal is ordered, with directions to render judgment for the defendant.